UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-688-MOC
(3:11-cr-288)

| | | |
|---|---|---|
| **RODOLPHO TRUJILLO,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the court on petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. #1).

I.

In August 2011, Petitioner Rodolpho Trujillo was arrested for his participation in a narcotics-trafficking and money-laundering operation that involved several individuals around Charlotte, North Carolina. (Presentence Report, June 16, 2012, Doc. #45, 3:11-cr-288 (hereinafter "PSR"), at 3-5). Pursuant to an agreement with the United States, (Doc. #29, 3:11-cr-288 (hereinafter "Plea Agreement")), Petitioner pleaded guilty on January 24, 2012, to counts of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, 18 U.S.C. § 846, and conspiracy to launder money, 18 U.S.C. § 1956(h). (Plea Agreement at 1-2; Rearraignment Tr., Doc. #71, 3:11-cr-288 (hereinafter "Rearraignment Tr.")). The agreement specified that the parties agreed jointly to recommend a finding at sentencing that the amount of cocaine that was known to or reasonably foreseeable to Petitioner was between 15 and 50 kilograms of cocaine, resulting in a base-offense-level of 34. (Plea Agreement at 2). The

agreement further specified that Petitioner "agrees to cooperate with the United States" if "requested by the United States, but only if so requested." (Id. at 5). "Nothing in [the] agreement places any obligation on the United States to seek [Petitioner's] cooperation or assistance." (Id. at 7). The agreement also contained a waiver of Petitioner's right to appeal or seek post-conviction relief on grounds other than ineffective assistance of counsel and prosecutorial misconduct. (Id. at 4–5).

At the time that he signed his plea agreement, Petitioner also signed a Factual Resume that "accurately describe[s] the events and circumstances surrounding [his] offenses." (Doc. #33, 3:11-cr-288, at 3.) The Factual Resume described "some of the relevant facts sufficient to provide a factual basis for the offenses to which the defendant [was] pleading guilty." (Id. at 1). Among other things, the Factual Resume explained that Petitioner, along with his codefendant and others, conspired to distribute and possess with intent to distribute at least five kilograms of cocaine, that during a meeting recorded by law-enforcement he discussed "conducting a 25-kilogram cocaine transaction in the near future," and that Petitioner and his co-conspirators agreed to launder money, both to promote the carrying on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity. (Id. at 2).

The Honorable David S. Cayer, United States Magistrate Judge, conducted an extensive plea colloquy under Federal Rule of Criminal Procedure 11, during which Petitioner was represented by one of his two attorneys. (Rearraignment Tr. at 1-2). The court placed Petitioner under oath and confirmed that he understood that he could be prosecuted if he gave false information. (Id. at 2). In response to questions from the Court, Petitioner stated under oath that

he was in fact guilty of the offenses to which he was pleading guilty, (Id. at 8), and that nobody "threatened, intimidated or forced [him] to enter a guilty plea." (Id. at 12). During the colloquy, the United States described the terms of the plea agreement, including the agreement jointly to recommend that the district court find "the amount of cocaine that was known to or reasonably foreseeable to the defendant was in excess of 15 kilograms but less than 50 kilograms," and Petitioner confirmed that he understood and agreed with the terms of the plea agreement as they were described by the government. (Id. at 9-12). The Court also asked Petitioner about his satisfaction with the work of his attorney. (Id. at 12-13). Petitioner affirmed that he "had enough time to discuss with [his] attorney any possible defenses he may have" and that he was satisfied with the services of his attorney. (Id. at 12). When given the opportunity to speak about his attorney's services, Petitioner stated, "I'm just thankful." (Id. at 12-13). Based upon what Petitioner and his attorney said during the colloquy, Magistrate Judge Cayer accepted Petitioner's guilty plea after finding that "it was knowingly and voluntarily made." (Id. at 13).

  Before Petitioner was sentenced, Petitioner's attorneys filed a number of documents advocating on behalf of Petitioner. They filed objections to the Presentence Report prepared by the probation office, (Id.), which was revised on June 6, 2012 (Doc. #45, 3:11-cr-288). They also submitted letters from a number of different entities describing Petitioner's success in various programs and certificates that reflected his academic achievement. (Doc. #52, 3:11-cr-288). Petitioner's attorneys also filed a thorough motion that sought a downward departure, a variance, and relief from the statutory mandatory minimum applicable to his drug-trafficking offense under the safety valve provision, 18 U.S.C. § 3553(f). (Doc. #53, 3:11-cr-288, at 1, 9, 11-13).

The court sentenced Petitioner to a term of imprisonment of 135 months. (Sentencing Tr., Doc. #72, 3:11-cr-288 (hereinafter "Sentencing Tr."), at 37-38). During the sentencing hearing, where he was actively represented by both of his attorneys (Id. at 1-2, 20-22), Petitioner argued, among other things, that he was not a supervisor and that he qualified for the safety valve provision. (Id.). Petitioner explained that he submitted a "proffer to the United States," which he provided to the Court. (Id.) Petitioner explained that "he did not provide the names of his suppliers and . . . customers," because he did not wish to put his family in danger. (Id. at 31-33). The court noted that the proffer also contained no information about how money was being laundered by Petitioner's operation. (Id. at 31). The court determined that Petitioner was not a supervisor, but that he was not eligible for the safety valve, noting that the safety valve provision required Petitioner to give a proffer of "every bit of information that he has" related to his offense or the "same course of conduct" so that the United States "could use it if they want to prosecute others." The court concluded that Petitioner was not eligible because he withheld information from his proffer. (Id. at 31, 34). Petitioner received, however, a downward adjustment for acceptance of responsibility under § 3E1.1(a) and (b). (Doc. #59, 3:11-cr-288, at 1; PSR at 6.)

The Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction and sentence on December 4, 2013. United States v. Trujillo, 547 F. App'x 300 (4th Cir. 2013). The Court rejected the argument raised in a brief prepared by counsel pursuant to Anders v. California, 386 U.S. 738 (1967), that "trial counsel was ineffective for failing to take the steps necessary to ensure that Petitioner received the benefit of the safety valve provision." (Id. at 301). The Court also found meritless four arguments raised by Petitioner in a pro se supplemental brief: "that he

received ineffective assistance of counsel, that the drug amount on which his sentence was based was erroneous, that there was insufficient evidence to support the money laundering conviction and related increase to his base offense level, and that there exists an unwarranted sentencing disparity between himself and a co-conspirator." (Id.)

Petitioner filed a timely Motion to Vacate, and after an initial screening the court ordered the government to respond within sixty days on December 12, 2014. (Doc. #2). After the court granted two extensions of time, the government filed its response and a motion to dismiss on May 14, 2015. (Doc. #10). On May 22, 2015, the court allowed Petitioner thirty days to file his reply, which the court deems timely as it appears he deposited the Reply in the prison mailing system within that time period. (Doc. #11).

It appearing that the issues have been fully briefed, the court enters the following findings, conclusions, and Order denying the petitioner's Motion to Vacate, Set Aside, or Correct Sentence.

## II.

Petitioner makes the following contentions in his Motion to Vacate:

(1) Petitioner's trial attorneys were constitutionally deficient;

(2) Petitioner's appellate attorney was constitutionally deficient; and

(3) Petitioner's charges and plea agreement were affected by prosecutorial misconduct.

See (Doc. #1). Notably, in his reply to the government's response, Petitioner claims to abandon "all arguments in his § 2255 motion except for the ineffective assistance of counsel as it relates

to the safety valve issue." (Doc. #13 at 1). However, this court will still consider all arguments raised by Petitioner in his original Motion to Vacate, and address each contention seriatim.

III.

**A. Ineffective Assistance of Trial Counsel**

Petitioner argues that he was not afforded his Sixth Amendment right to effective assistance of trial counsel, arguing his counsel was responsible for multiple errors that negatively impacted his sentencing. First, Petitioner argues that his trial counsel forced him to sign the plea agreement. (Doc. #1 at 5). Petitioner also claims that counsel failed to communicate with him between the plea hearing and the day before sentencing, leaving him unrepresented for that entire time. (Id. at 6). Next, Plaintiff argues that his trial counsel failed to investigate the government's charges, and instead relied on the government's word to Petitioner's detriment. (#1 at 12). Petitioner alleges that this failure led to an incorrect amount of drugs being used as the basis for the plea agreement, resulting in a much greater length of time in prison. (Id. at 13). Further, Petitioner claims trial counsel did not properly investigate the government's money laundering charges, and that investigation from his counsel would have resulted in a more definite and accurate sentence. (Id. at 15). Additionally, Petitioner argues that his trial counsel failed to secure the reduction in sentence provided for by the safety-valve provision, since counsel's absence prevented Petitioner from providing the government with the required substantial information. (Id. at 8). As a result, Petitioner argues the length of his sentence was negatively impacted and he is entitled to a hearing over this claim. (Id. at 9).

In response, the government argues that Petitioner cannot show that he was coerced into signing his plea deal, as he stated under oath that nobody had threatened, intimidated, or forced

him into entering a guilty plea, (Doc. #11 at 8), making Petitioner's allegations in his motion "palpably incredible and patently frivolous or false." (Id. at 9, citing United States v. Lemaster, 403 F.3d 216, 222-23 (4th Cir. 2005)). The government argues that Petitioner cannot blame his counsel for their eight-month absence, as Petitioner's guilty plea and the presentence report indicated there was little counsel's presence would accomplish, and that Petitioner's counsel nevertheless filed objections and a detailed motion on Petitioner's behalf. (Id. at 13). As for Petitioner's argument over his counsel's failure to investigate, the government notes that counsel is not obligated to pursue an investigation if there is strong evidence against doing so, and the evidence against Petitioner included recorded statements, physical evidence, and testimony of a codefendant. (Id. at 10-11). Additionally, the government notes that Petitioner has not even attempted to prove that, but for his counsel's failure to investigate, Petitioner would not have entered a guilty plea. (Id.). With respect to Petitioner's argument over the safety valve provision, the government points out that Petitioner's counsel advocated strongly for the application of the provision, and that it was not denied because of error by counsel, but because Petitioner withheld relevant key information from his proffer, such as names of his customers, sources of supply, and how he laundered money. (Id. at 14).

  Here, the court finds the government's arguments compelling, and agrees that Petitioner has failed to establish any claim that trial counsel's efforts were constitutionally deficient in this case. While Petitioner could have qualified for the safety-valve provision, as he claims in his reply, (Doc. #13 at 1-2), the provision ultimately applies only if Petitioner "has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or

plan." 18 U.S.C. § 3553(f)(5). As previously stated, Petitioner did not provide the government with key information relevant to the offenses and conduct. For these reasons, and for the reasons stated in the government's response, this court finds Petitioner's first claim to be without merit.

### B. Ineffective Assistance of Appellate Counsel

Petitioner next argues that he was not afforded his Sixth Amendment right to effective appellate counsel. He argues that his appellate counsel filed an "Anders Brief" without consulting Petitioner first and failed to raise the issues on appeal that Petitioner wanted raised, resulting in an improper ruling at the appellate stage. (Doc. #1 at 11). The government counters that appellate counsel is not required to raise every issue on appeal, and that courts should only find appellate counsel ineffective when "ignored issues are clearly stronger than those presented." (Doc. #11 at 16, citing United States v. Mason, No. 12-8042, 2014 WL 7210976, at *3 (4th Cir. 2014) (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000))). Petitioner has failed to identify issues that are clearly stronger than the issues raised which the Fourth Circuit rejected. As a result, the court finds that Petitioner's appellate counsel was not constitutionally deficient in any way, and that Petitioner's second claim thus lacks merit.

### C. Prosecutorial Misconduct

Finally, Petitioner argues that prosecutorial misconduct affected the outcome of the proceedings. He argues that the government knowingly used false information in relation to both the drug and money laundering charges, but never took steps to avoid or correct this misuse. (Doc. #1 at 17). Consequently, Petitioner alleges the charges against him were actually much weaker than the prosecution claimed and Petitioner was thus wrongly subjected to a much

harsher sentence. (Id. at 18). Additionally, Petitioner argues the government's charge of money laundering is based on his codefendant's false statements. (Id. at 19).

In response, the government notes that Petitioner waived his theory of prosecutorial misconduct by pleading guilty, as a guilty plea "conclusively establishes the elements of the offense and the material facts" and functions as "a waiver of all nonjurisdictional defects." (Doc. #11 at 17, citing United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993)). Further, the government notes a claim of prosecutorial misconduct is procedurally barred, as he raised this theory for the first time in his motion, and failure to raise prosecutorial misconduct during the criminal proceedings bars relief unless Petitioner demonstrates either cause and prejudice or actual innocence. Since Petitioner does not allege either one, his claim cannot stand. Lastly, the government argues Petitioner has failed to make more than conclusory allegations that the prosecutor's conduct was improper and that such conduct deprived Petitioner of a fair resolution of the chrages, both of which must be proven to succeed on a prosecutorial misconduct claim. (Id. at 19).

Here, the court finds that Petitioner's claim of prosecutorial misconduct is without merit, for the reasons described above by the government.

IV.

**Denial of Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller El v. Cockrell, 537 U.S. 322, 336 38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484–85 (2000) (in order to satisfy § 2253(c) when court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right).

**ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**. The court declines issuance of a Certificate of Appealability for the reasons provided herein.

Signed: July 6, 2015

Max O. Cogburn Jr.
United States District Judge